UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-03433-AH-SKx | Date | March 26, 2026 |
| Title | *Anne Razon-Salazar et al. v. City of Murrieta et al.* | | |

| | |
|---|---|
| Present: The Honorable | Anne Hwang, United States District Judge |

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (DKT. NO. 25)**

Before the Court is a Motion to Dismiss ("Motion") filed by Defendants City of Murrieta ("City"), Mark Kwiatkowski, Michael Mulligan, Ronald Smith, Phillip Stinnett, Jacob Fernandez, and Travis Baker (collectively, "Defendants"). Dkt. No. 25.  Plaintiffs Anne Razon-Salazar, Aldwin Salazar, Edline Salazar, Gabriela Salazar, and Miya Salazar (collectively, "Plaintiffs") opposed.  Dkt. No. 26.  Defendants replied.  Dkt. No. 27.  The Court held a hearing on March 25, 2026.  For the following reasons, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I.   BACKGROUND[1]

This civil rights action arises from the fatal shooting of Plaintiffs' husband and father, Edwin Salazar, on January 29, 2025.  FAC ¶ 3.  Plaintiffs allege Officers Kwiatkowski, Mulligan, Smith, and Stinnett (collectively, "Defendant

---

[1] The following factual allegations are taken from the First Amended Complaint ("FAC").  FAC, Dkt. No. 15.  The Court considers well-pleaded factual allegations as true for the purposes of this Motion.

Officers") responded to a call at a residence in Murrieta, California, and breached the door to the apartment of Edwin Salazar, Anne Razon-Salazar, and Miya Salazar. *Id.* ¶¶ 27–28. After entering the apartment, Officers Kwiatkowski and Mulligan shot Edwin Salazar. *Id.* ¶ 29. Plaintiffs allege that at the time of the shooting, Edwin Salazar had not made aggressive or furtive movements, had not aimed any weapon towards or moved towards Defendant Officers, and had not verbally threatened anyone. *Id.* ¶¶ 31–32. The Defendant Officers summoned paramedics to render medical care several minutes after the shooting. *Id.* ¶ 37. Edwin Salazar died of his injuries. *Id.* ¶ 38.

Plaintiffs' FAC brings eight causes of action: (1) excessive force in violation of the Fourth Amendment; (2) denial of medical care in violation of the Fourth Amendment; (3) interference with familial relationship in violation of the Fourteenth Amendment; (4) municipal liability for failure to train; (5) battery; (6) negligence; (7) negligent infliction of emotional distress; and (8) violation of the Bane Act, Cal. Civ. Code § 52.1. *See generally* FAC.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under a 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citation omitted). On a 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice. *Id.* (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ P. 15(a). However, a "district court may dismiss without leave where a

plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

## III.   DISCUSSION

Defendants move to dismiss Plaintiffs' third cause of action for interference with familial relationships in violation of the Fourteenth Amendment and fourth cause of action for municipal liability for failure to train. *See generally* Mot.

### A.   Fourteenth Amendment Claim

Plaintiffs bring a claim against Defendant Officers for interference with familial relations in violation of Fourteenth Amendment.  Anne Razon-Salazar, the legal spouse of Edwin Salazar, was married to and cohabitated with him for more than twenty years.  FAC ¶ 54.  Aldwin and Edline Salazar, biological children of Edwin Salazar from a prior marriage, were under his joint custody and had "maintained regular contact through phone calls, texts, and visits" with him.  *Id.* ¶¶ 55–56.  Gabriela and Miya Salazar, biological children of Edwin Salazar, had lived with him since birth.  *Id.* ¶¶ 57–58.  Plaintiffs each allege they "enjoyed a close, loving relationship" with Edwin Salazar until his death.  *Id.* ¶¶ 54–58. Defendants argue that Anne Razon-Salazar lacks standing to bring the claim as a spouse, and that each Plaintiffs' allegations are insufficient to establish a Fourteenth Amendment interest.  Mot. at 8–9.

The Ninth Circuit has recognized that "parents have a Fourteenth Amendment liberty interest in the companionship and society of their children," as well as "the converse situation of a child's interest in her relationship with a parent." *Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 96 F.4th 1209, 1221 (9th Cir.) (citation modified), *reh'g en banc granted, opinion vacated*, 106 F.4th 940 (9th Cir. 2024); *Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790, 804 (9th Cir. 2025) (en banc) (adopting the three-judge panel's discussion of the Fourteenth Amendment claim).  The Ninth Circuit has not decided whether a substantive due process right exists in the specific context of a "familial-association claim asserted by a spouse, rather than a parent or child." *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022).  Still, the court has recognized that relationships "that attend the creation and sustenance of a family and similar highly personal relationships" are protected by the Fourteenth Amendment.  *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1193 (9th Cir. 1988)

(citation modified).  Accordingly, district courts within the Ninth Circuit have found that spousal or intimate partner relationships may be protected by the Fourteenth Amendment.  *See, e.g.*, *Rasey-Smith v. City of Los Angeles*, 2026 WL 252567, at *9 (C.D. Cal. Jan. 15, 2026) (finding spousal relationship to be protected by the Fourteenth Amendment); *Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117, 1164 (E.D. Cal. 2016) (finding a "cohabitating partnered relationship" with "evidence of a deep familial association" to be protected by the Fourteenth Amendment).  The Court therefore declines to dismiss Anne Razon-Salazar's claim based solely on her spousal relationship.

The Court next considers whether Plaintiffs sufficiently allege close relationships that are entitled to Fourteenth Amendment protections.  The "mere label of 'spouse' or 'biological father' alone is insufficient to plead a right of familial association."  *See Est. of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1044 (N.D. Cal. 2022) (citation omitted).  Those relationships protected by the Fourteenth Amendment involve "individuals [who] are deeply attached and committed to each other."  *IDK*, 836 F.2d at 1193; *see also Mann v. City of Sacramento*, 748 F. App'x 112, 114–15 (9th Cir. 2018) (recognizing a right of intimate association for "relationships involving marriage, child-rearing, or cohabitation" under the First and Fourteenth Amendments).  In the context of parent-child relationships, "judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility," and "even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to the Fourteenth Amendment protections."  *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018).

Courts have found that allegations that plaintiffs "shared a close relationship and special bond with their spouse or biological father" were "only conclusory statements that do not allow the Court to draw a reasonable inference that [they] had the deep attachments and commitments with [the decedent] required to merit" Fourteenth Amendment protection.  *See, e.g.*, *Chivrell*, 623 F. Supp. 3d at 1044.  Plaintiffs' allegations that they "enjoyed a close, loving relationship" with Edwin Salazar are similarly conclusory.  *See* FAC ¶¶ 54–58.  On the other hand, Plaintiffs additionally allege that Anne Razon-Salazar cohabitated with Edwin Salazar for twenty years, Gabriela and Miya Salazar lived with him since birth, and Aldwin and Edline Salazar "maintained regular contact through phone calls, texts, and visits" with him.  *Id.*  The Court finds these additional allegations sufficient to infer a close familial relationship between Plaintiffs and Edwin Salazar.  *See, e.g.*, *Est. of*

*Valentine v. Cnty. of Merced*, 2024 WL 4374303, at *33 (E.D. Cal. Oct. 2, 2024) (finding allegations that plaintiffs with familial relationships "frequently visited or spoke with Decedent" to be "sufficient to reasonably infer that the objective characteristics of the relationships warrant constitutional protection").

Accordingly, the Court DENIES the Motion as to the Fourteenth Amendment claim.

### B.    Municipal Liability Claim

Plaintiffs bring a claim against the City for failure to train. "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). To establish municipal liability based on a failure to train, a plaintiff must show that "(1) he was deprived of a constitutional right, (2) the City had a training policy that amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact; and (3) his constitutional injury would have been avoided had the City properly trained those officers." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (alterations in original) (citation modified).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (citation modified). "Deliberate indifference exists when the need 'for more or different' action 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Plaintiffs can meet this standard in two ways. First, "[i]n some circumstances, the policy may be so facially deficient that any reasonable policymaker would recognize the need to take action." *Id.* Under such circumstances a plaintiff "need point only to the policy itself to establish that the municipality's policymakers were on notice that the plaintiff's federally protected rights would likely be violated if they failed to act." *Id.* at 1141–42. "Alternatively, if the policy is not obviously, facially deficient, a plaintiff must

---

ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Id.* at 1142.

Here, Plaintiffs allege the City failed to train its officers as to proper police tactics, use of force and deadly force, and detention and arrest procedures. FAC ¶¶ 83–84. Specifically, Plaintiffs allege the officers failed to knock and announce themselves prior to entering Edwin Salazar's residence, failed to coordinate a tactical plan of approach or check for prior calls for service, and failed to issue adequate commands before using deadly force, among other allegations. *Id.* ¶ 85. Defendants argue that Plaintiffs fail to allege how its training is deficient, that a pattern of similar constitutional violations occurred, or that the alleged failure to train was "so patently obvious" that the City could be liable. Mot. at 14. Plaintiffs argue that the officers' failure to follow proper procedures, coupled with their alleged use of excessive force, are "sufficient to support a finding of 'obvious' deliberate indifference by the City without needing a pattern of similar violations." Opp'n at 9. Plaintiffs rely on the Supreme Court's recognition of the "possibility that, in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference" and a single incident can give rise to liability. *See Connick v. Thompson*, 563 U.S. 51, 63 (2011) (citation modified).

However, "while deliberate indifference can be inferred from a single incident when 'the unconstitutional consequences of failing to train' are 'patently obvious,' an inadequate training policy itself cannot be inferred from a single incident. Otherwise, a plaintiff could effectively shoehorn any single incident with no other facts into a failure-to-train claim against the supervisors and the municipality." *Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022) (citation modified) (concluding that plaintiffs failed to state a claim for failure to train where they did not plead facts suggesting the training was defective). Indeed, the Supreme Court has noted that the fact "that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390–91 (citation modified). "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* Further, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.*

Here, beyond conclusory statements that the City's training was inadequate or negligent, Plaintiffs do not allege any specific facts about the City's training

policies.  When a complaint contains "no allegations of similar constitutional violations that have occurred in the past or any other facts pertaining to the training of [City] personnel," courts have declined to "infer from a single incident of alleged unconstitutional incident '*both* that the training was defective *and* that [the City was] deliberately indifferent to its unconstitutional consequences.'"  *See, e.g.*, *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 937–38 (S.D. Cal. 2022) (emphasis in original) (quoting *Hyde*, 23 F.4th at 874) (collecting cases).  Without factual allegations regarding the City's training policies, the Complaint here likewise does not adequately state a claim for failure to train.

Accordingly, the Court GRANTS the Motion as to the municipal liability claim with leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Motion.  Any amended complaint must be filed within **fourteen (14) days** of the date of this Order.

**IT IS SO ORDERED.**